[Crim. No. 3743. First Dist., Div. One. June 6, 1960.]

THE PEOPLE, Respondent, v. RUDOLPH AGUIRRE,
Appellant.

Mathew M. Fishgold, under appointment by the District Court of Appeal, for Appellant.

Stanley Mosk, Attorney General, Arlo E. Smith and Joseph I. Kelly, Deputy Attorneys General, and W. O. Weissich, District Attorney, for Respondent.

BRAY, P. J.—Defendant appeals from a judgment of conviction, after jury verdict, of violation of section 4502, Penal Code (possession of a weapon while a prisoner in a state prison).

## QUESTIONS PRESENTED

1. Did delay of one year in bringing indictment violate defendant's constitutional right to a prompt and speedy trial?

2. Was defendant denied due process, because of (a) the interval between the offense and the indictment, (b) alleged violation by the grand jury of section 919, Penal Code, and by the district attorney of section 26501, Government Code?

3. Is a defendant constitutionally entitled to be represented both by an attorney and himself?

## RECORD

As defendant concedes there was sufficient evidence to support the verdict, only a brief statement of the evidence is necessary. On September 16, 1957, defendant, a prisoner at San Quentin, under conviction of two counts of robbery in the first degree with two priors, was found in possession of a knife. September 17 he was taken before the prison disciplinary court, which placed him in isolation. He was then taken before the prison's disciplinary committee and by said committee given 29 days in isolation. September 2, 1958, approximately one year after he was found with the knife, the Marin County Grand Jury indicted him for violation of section 4502, Penal Code.

### 1. *Was Defendant Denied a Prompt and Speedy Trial? No.*

Defendant's contention that he was is based on the fact that approximately a year elapsed between the commission of the offense and the issuance of the indictment. There is no requirement that a defendant be indicted or arrested at any particular time between the commission of a crime and the expiration of the time allowed by the statute of limitations as to that particular crime. Defendant relies on article I, section 13, California Constitution, section 681a, Penal Code, as it existed in 1958,[1] and on section 849, Penal Code. Article I, section 13, California Constitution, provides: "In criminal prosecutions, in any court whatever, the party accused shall have the right to a speedy and public trial . . ." Section 681a, Penal Code, provided: "The welfare of the people of the State of California

---

[1] It was repealed by Stats. 1959, ch. 1693, § 1, and replaced by Penal Code, section 1050.

requires that *all proceedings in criminal cases* shall be heard and determined at the earliest possible time. It shall be the duty of all courts and judicial officers and of all district attorneys to expedite the hearing and determination of all such cases and proceedings to the greatest degree that is consistent with the ends of justice.'' (Emphasis added.) Section 849, Penal Code, provides: ''(a) When an arrest is made without a warrant by a peace officer . . . the person arrested . . . must, without unnecessary delay, be taken before the nearest or most accessible magistrate . . .''

■ The basic policy underlying both these constitutional and statutory provisions is to protect the accused from having criminal charges pending against him an undue length of time. (*People* v. *Godlewski,* 22 Cal.2d 677, 682 [140 P.2d 381].)

■ One does not become an accused until the filing of a complaint or other charge. (*People* v. *Jordan,* 45 Cal.2d 697, 708 [290 P.2d 484].) Correctional Officer Ellsworth who found the knife on defendant was asked: ''Did you take him into custody?'' He replied, ''I called for assistance.'' He was then asked: ''In effect you had arrested him?'' Answer: ''Yes.'' Actually, he merely kept defendant until another officer arrived to whom he turned defendant over. ■ Arrest means taking a person into custody. Defendant was already in custody. It is illogical to say that a prisoner in a state prison, already in custody, is arrested merely because he is turned over from one prison officer to another.

■ Defendant's contentions have been answered in *People* v. *Ragsdale* (Feb. 1960), 177 Cal.App.2d 676 [2 Cal. Rptr. 640]. There the defendant was a prisoner in San Quentin. On March 9, 1958, he violated a prison regulation and was disciplined therefor. On September 15 he was indicted for the offense for which he had been disciplined. The defendant made the same contentions there as defendant does here. The court answered them as follows: ''. . . the provision of the California Constitution upon which appellant relies (Cal. Const., art. I, § 13) guarantees 'the party accused' a speedy trial. Appellant was not a 'party accused' within the meaning of this section until the indictment of the grand jury was returned. (*People* v. *Jordan, supra,* 45 Cal.2d 697, 708.) Appellant seems to claim additionally that he was 'arrested' on March 9, 1958, and his right to a speedy trial then arose. An arrest is 'taking a person into custody.' (Pen. Code, § 834.) Since appellant was already in custody the conduct of the prison officers in disciplining him for violation of prison rules

was not an arrest. Whatever rights to a speedy trial appellant may have had were governed by Penal Code, section 1381.[2] (*Osmulski* v. *Superior Court*, 169 Cal.App.2d 444 [337 P.2d 520].) There is no showing that appellant ever made the demand for a trial required by that section." (Pp. 814-815.)

Defendant was not denied a prompt and speedy trial.

2. *Was Defendant Denied Due Process Because of (a) Interval Between Offense and Indictment? No.*

 Defendant contends that because of the disciplinary proceeding he was led to believe that no criminal charges would be brought against him. He does not contend that he was so told by any of the prison personnel, but bases his contention on the fact that he was not told that criminal charges would be filed. At the time defendant was questioned by the prison officers concerning his possession of the knife, he was asked, "Didn't you know it could be charged as a felony against you to be found in the State Prison with a deadly weapon in your possession, this knife?" Defendant contends that because he was asked this question concerning his knowledge at the time he had the knife in his possession, and the fact that he was thereafter disciplined, the authorities had no right thereafter to prosecute him in the criminal court. It is obvious that there was nothing in this question which promised or indicated to him that he would not be prosecuted. Because of the elapse of time he contends that he was not given adequate notice of the nature or pendency of the charge against him. There is nothing to this contention. There was no obligation on anyone to inform him that criminal charges might be brought against him. The grand jury indictment and the transcript of the proceedings before the grand jury adequately notified him of the charge against him.

(b) *Was Section 919, Penal Code, violated by the grand jury and Section 26501, Government Code, by the district attorney? No.*

 Section 919, Penal Code, provides in part, "The grand jury shall inquire into: . . . The condition and management of the public prisons within the county." Obviously the duty placed upon the grand jury by this section is to insure that the public prisons are being administered in a

---

[2]Section 1381 referred to in the Ragsdale case provides that where a charge is filed against a person serving a sentence in a state prison such person must be brought to trial within 90 days after he delivers a written notice to the district attorney of his desire to be brought to trial on such charge. No such request was made in our case.

proper fashion and not to require the grand jury, unless asked by proper authorities, to investigate infractions of prison regulations.

▇▇ Section 26501, Government Code, provides: "The district attorney shall institute proceedings before magistrates for the arrest of persons charged with or reasonably suspected of public offenses when he has information that such offenses have been committed. . . ." There is no evidence that the district attorney was apprised of defendant's offense at any time other than when he acted, nor does this section require him, unless asked by the prison authorities, to investigate every violation of prison rules to determine whether or not additionally a crime has been committed.

3. *Is a defendant constitutionally entitled to be represented both by attorney and himself? No.*

Defendant requested the court to appoint an attorney to defend him. The court appointed the public defender. At the opening of the trial defendant demanded the right to be represented both by an attorney and himself. The court informed him that he could not be represented by both. Defendant refused to choose. The trial proceeded with counsel representing defendant. The court refused to permit defendant also to represent himself. It is well settled that the court does not guarantee a defendant the right to represent himself and at the same time to be represented by counsel.

▇▇ "As has been stated (*ante,* footnote 3), despite the constitutional (art. I, § 13) and statutory (Pen. Code, § 686) provisions that defendant has the right to appear and defend in person *and* with counsel, defendant is not entitled to have his case *presented* in court *both by himself and by counsel* acting at the same time or alternating at defendant's pleasure. (*People* v. *Northcott* (1930), *supra,* 209 Cal. 639, 648-650 [6] 651; *People* v. *Mims* (1958), 160 Cal.App.2d 589, 595 [2] [325 P.2d 234].) So long as defendant is represented by counsel at the trial, he has no right to be heard by himself (*People* v. *McKinney* (1957), *supra,* 152 Cal.App.2d 332, 336 [6]; *People* v. *Glenn* (1950), *supra,* 96 Cal.App.2d 859, 868); conversely, when defendant has intelligently declined the aid of counsel he has no right to interrupt the trial with a demand for legal assistance (*In re Connor* (1940), 16 Cal.2d 701, 709 [8] [108 P.2d 10])." (*People* v. *Mattson* (1959), 51 Cal.2d 777, 789 [336 P.2d 937].)

"Prior to trial defendant was repeatedly urged, and refused, to accept representation by the public defender; he presented the untenable but not naive argument (since rejected in *People* v. *Mattson* (1959), *supra,* 51 Cal.2d at p. 783 et seq.), that his state constitutional (art I, § 13) and statutory (Pen. Code, § 686) right to 'appear and defend, in person and with counsel' was 'conjunctive' and entitled him to conduct his case personally and at the same time to be furnished the advice of an attorney. . . ." (*People* v. *Linden* (1959), 52 Cal.2d 1, 17 [338 P.2d 397].)

In *People* v. *Zammora* (1944), 66 Cal.App.2d 166 [152 P.2d 180], the trial court, because of the large number of defendants and counsel and the lack of space in the courtroom, refused to permit the defendants to sit with their counsel at the trial. Referring to the constitutional provision that guarantees a defendant the right "to 'appear and defend in person *and* with counsel' " the reviewing court held that "A basic part of a defendant's right to counsel is that of consultation whenever necessary." (P. 234.) Defendant takes certain language in the Zammora case out of context and contends that the case is support for his contention that he was entitled to represent himself and also have counsel. That question was not before the court. Moreover, the holdings in the later Supreme Court cases, *People* v. *Mattson, supra,* 51 Cal.2d 777, 795, and *People* v. *Linden, supra,* 52 Cal.2d 1, 17, both decided in 1959, are flat upon the subject. See to the same effect, *People* v. *Mims,* 160 Cal.App.2d 589, 595 [325 P.2d 234], and *People* v. *Clark* (1959), 176 Cal.App.2d 316, 318 [1 Cal.Rptr. 176].

The judgment is affirmed.

Tobriner, J., and Duniway, J., concurred.