[Crim. No. 12000. Second Dist., Div. One. May 10, 1967.]

THE PEOPLE, Plaintiff and Respondent, v. INNOCENCIO B. HERNANDEZ, Defendant and Appellant.

Frank P. Rosen, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and Bradley A. Stoutt, Deputy Attorney General, for Plaintiff and Respondent.

FOURT, J.—This is an appeal from a judgment of conviction of possession of heroin.

In an indictment filed August 18, 1965, defendant was charged with the possession for sale of heroin on February 10, 1965 (Health & Saf. Code, § 11500.5). It was further charged that twice previously he had been convicted of violating the provisions of Health and Safety Code, section 11500, namely, on April 3, 1953, and on June 22, 1961, and had served a term of imprisonment therefor in the state prison. On September 1, 1965, defendant was in court and a public defender was appointed to represent him. Defendant pleaded not guilty on September 13, 1965, denied the charged prior convictions and further pleaded " 'Once in Jeopardy'; that he has been in jeopardy for the offense charged on May 11, 1965 in the . . . Superior Court in Department 117 and on July 29, 1965 in the . . . Superior Court in Department 103." After trial by jury, which commenced on October 22, 1965, defendant was found guilty of a violation of section 11500, Health and Safety Code (possession of heroin), a lesser but necessarily included offense. Both charged prior convictions were found to be true. The court found that defendant had suffered no former jeopardy. Motions for new trial and probation were denied and defendant was sentenced to the state prison.

A résumé of some of the facts is as follows: Officer Fesler, of the Los Angeles Police Department (an experienced narcotics officer who had worked in the narcotics enforcement field for seven years, had examined over 4,000 narcotics users and had made over 1,000 arrests for narcotics violations), on February 10, 1965, went on duty at about 4:30 p.m. To acquaint himself with various convicted narcotics violators "being released in the city" Fesler checked the photographs upon the registration forms which such violators are required to fill out "upon release from prison and after 30 days after entering a city." Defendant's photograph and registration form were among those checked by Fesler. The original file which this court has ordered to this court discloses that defendant was released from state prison on about January 11, 1965. In other words, he had been out of prison less than one month when Fesler, wearing civilian clothes, and in the

course of his duties, went to the "Brass Rail Bar" with Sergeant Dorrell. They did not go to the bar specifically to arrest anyone; however, the place was reputed to be a station where narcotics peddlers met their customers. There were about 25 persons in the bar and Fesler saw a Marjorie Green, a convicted narcotics violator, seated on a bar stool and defendant standing beside her. Fesler looked at defendant for a few minutes "attempting to place him" in his mind, thinking, at first, that appellant resembled Cruz Carmona, a person whom Fesler had known some five years previously. Fesler called out "Cruz" and defendant did not reply. Fesler, with his police badge in hand, then said, "I am a police officer. What is your name?" Defendant looked at Fesler and Fesler could see that the pupils of defendant's eyes were quite contracted. Defendant replied that his name was "Benny Gonzalez." Fesler inquired whether he was on parole and defendant said that he was not. Fesler saw puncture wounds on a vein at the base of defendant's right thumb. Defendant moved his head from time to time and Fesler noted that there was no change in the size of his eye pupils. Fesler then remembered defendant as the parolee whose picture he had seen at the office earlier and told defendant that he was a liar, and was under arrest for being under the influence of a narcotic (heroin). Defendant tried to break away from Fesler; however, defendant was handcuffed, a quick search of defendant at the bar was made and a paring knife, teaspoon, toy balloons, and a box of empty gelatin capsules, two hypodermic needles and a medicine eyedropper with a gasket on the glass (used for the injection of heroin) were found on defendant. Defendant was then placed in the back seat of Fesler's vehicle at which time Fesler noted "additional pockets" in defendant's coat. A search of one of the pockets disclosed six knotted portions of toy balloons containing gelatin capsules.

Before any discussion of any charges against defendant, Fesler told defendant that he had a right to an attorney, a right to remain silent and that anything he might say could be used against him. Defendant stated that he understood his rights. Upon inquiry as to where defendant had acquired the heroin, defendant freely and voluntarily admitted that he had purchased it from a man on the street for $50, that he "bought the caps" as he wanted "something to put the heroin in," that he had "capped it up that day on the street," that he had used heroin about "two or three hours

ago.'' Substantially the same statement was made at the police building. It was the opinion of Fesler that defendant possessed the heroin for the purposes of selling the same.

Appellant asserts that there was not probable cause to make an arrest or search, that his rights to a speedy trial were violated, that prejudicial error occurred in the prosecutor's argument to the jury and that the court failed to instruct the jury properly.

Certainly the facts, which have been here related, and which presented themselves to Fesler at the bar, would lead a man of ordinary care and prudence to believe and conscientiously entertain an honest and strong suspicion that appellant was guilty of a crime. There was, as a consequence, probable cause to make the arrest. (*People* v. *Ingle,* 53 Cal.2d 407, 412-413 [348 P.2d 577] ; *People* v. *Torres,* 56 Cal.2d 864, 866 [17 Cal.Rptr. 495, 366 P.2d 823].)

With reference to the claim that there was a denial of a speedy trial, the record discloses that an information was filed on March 11, 1965, in case numbered 301,077, wherein appellant was charged with the same offense as is charged in the present case. The record in case numbered 301,077, indicates that on March 17, 1965, a motion to dismiss under section 995, Penal Code, was denied, a plea of not guilty was entered and the trial was set for May 4, 1965. On May 4, 1965, the cause was called for trial. Defendant moved that the court appoint private counsel in the place of the public defender. The motion was denied. Defendant's attorney stated that he needed additional time for an investigation and suggested that the trial date be set for June 1, 1965. The prosecution indicated at that time that it would be ready before June 1, 1965. The Judge set the trial for Monday, May 10, 1965.

On May 10, 1965, the prosecution requested a continuance for the reason that Officer Fesler had been called out of the state because of the serious illness of his father ; that he was some place in the midwest on his way back to Los Angeles by automobile, that he had been caught in a storm and would return to Los Angeles within a few days. The defendant refused to waive time. The court ordered the cause to trial until the day following May 11, 1965, at 9 a.m. On May 11th, defendant's counsel made a motion to dismiss upon the ground that the case had not been brought to trial within 60 days. The motion was granted.

On June 4, 1965, in case numbered 305,222, an information was filed charging the defendant with the same offense as was

previously charged and as charged in the present case under consideration. On June 10th, 1965, defendant was in court with counsel and pleaded not guilty and denied the priors. Trial was set for July 27, 1965. On July 20, 1965, the cause was advanced on calendar and defendant made the additional plea of not guilty by reason of having been once in jeopardy (case No. 301,077). The cause was then set for hearing on July 27, 1965, and on that date was called for trial. A motion was made by defendant to dismiss because of his having been once in jeopardy. On July 28th the matter of the ''once in jeopardy'' was argued again and was continued over until the next day, at which time the judge ruled that defendant was placed in jeopardy when he was held to answer in case numbered 301,077, and the case then under consideration, namely, 305,222 was ''dismissed pursuant to the rights of the defendant as provided for under Section 1382 Penal Code.'' Defendant was ordered released from incarceration.

Thereafter, the indictment with which we are now concerned was filed and the proceedings had as heretofore set forth.

The probation report shows that appellant was in custody from February 10, 1965, on a ''parole hold'' by his parole officer. Under the title ''Interested Parties'' it is therein set forth as follows:

''Defendant's parole agent, William Starrs, 541 South Spring Street, Los Angeles, verified that this defendant was released from state prison on parole on January 11, 1965. When released, he began residing with his sister, and was working as a dishwasher. On January 25, 1965, at the Nalline Testing Center, defendant's test showed a negative no change reading. A urine sample was taken, and the results which were reported on February 3, 1965, indicated that defendant had been using a morphine derivative. Defendant was to report to the parole department on February 8, 1965, but failed to keep this appointment and for this reason was considered to be a parolee at large. At the time he was arrested by the Los Angeles Police Department, he was then in violation of his parole. The parole agent further indicated that irregardless [sic] of the court's decision in this matter, defendant will be returned to state prison for having violated his parole.

''In a letter to the district attorney's office dated September 1, 1965, defendant's parole agent, William Starrs, reports the following: '. . . In accordance with parole and commu-

nity services division policy, I placed a parole violator's hold on subject Hernandez shortly after he was arrested by the Los Angeles Police Department for possession of narcotics on 2-10-65. . . . In this case, when we determined that the proceedings against Hernandez were dismissed, we submitted a report to the Adult Authority dated 8-5-65, recommending that subject's parole be cancelled and that he be returned to prison for several reasons. One of the primary reasons was that prior to subject's apprehension for possession of narcotics he had absconded from his parole and had a positive urine analysis which revealed the presence of morphine in his system. . . .' "

In other words, on February 10, 1965, appellant was a parole violator.

The basic policy of the law is to protect the accused from having criminal charges pending against him for an undue length of time. But what constitutes a speedy trial must be determined by the facts and circumstances of each particular case. It may well be that there can be circumstances justifying relief from an abuse of criminal process by the starting of successive prosecutions, but those circumstances are not present in the case before us.

First of all, appellant was not in jeopardy in either of the cases which preceded the present case. ''The defendant is in jeopardy when (1) placed on trial (2) for the same offense, (3) on a valid indictment or information or other accusatory pleading (4) before a competent court, (5) with a competent jury, duly impaneled and sworn and charged with the case; or, if the trial is by the court, it must be 'entered upon.' '' (1 Witkin, Cal. Crimes (1963) Defenses, § 184, subd. 2, p. 178.) In the case at hand appellant never waived a jury; in fact he demanded such. Dismissal of a felony prosecution where jeopardy has not attached is not a bar to filing a new felony action on the same charge. (See Pen. Code, §§ 1382, 1387.)

An order dismissing a prior information is not res judicata. (*People* v. *Nelson*, 228 Cal.App.2d 135, 138 [39 Cal.Rptr. 238]; *People* v. *Wilkes*, 177 Cal.App.2d 691, 697 [2 Cal.Rptr. 594]; *People* v. *Ferrera*, 149 Cal.App.2d 850, 852-853 [309 P.2d 533].) Furthermore, there was not a proper and timely notice to dismiss in this case. (*People* v. *Wilson*, 60 Cal.2d 139, 146-148 [32 Cal.Rptr. 44, 388 P.2d 452]; *People* v. *Allen*, 220 Cal.App.2d 796, 800 [34 Cal.Rptr. 106].)

Penal Code, section 1381, deals with a situation such as

appellant's, namely, of having a criminal charge filed against him while he was serving a term in prison. He had a right to have the charge brought to trial in 90 days after written notice to the district attorney of his desire. If the cause is not brought to trial in 90 days, the court, upon motion, must dismiss the charge. But dismissal is not necessarily a bar to further prosecution for a felony. (Pen. Code, § 1387.)

As Witkin states it, in California Criminal Procedure (1963) Trial, section 314, page 308: "The right only arises on written demand; if none is made there is no limit on the time of trial." The statute is applicable to a parolee from state prison. Hence, if he is arrested and charged with a crime committed while on parole, his constructive custody changes to actual custody and his only right to a speedy trial is that which arises after written notice under Penal Code, section 1381. (*People* v. *Goss*, 193 Cal.App.2d 720 [14 Cal.Rptr. 569].) The time starts to run when a defendant delivers his demand to the district attorney. Appellant here made no written demand in conformity with the law made and provided for persons in his category. His only right to a speedy trial is that which arises after written notice under Penal Code, section 1381. (*People* v. *Goss, supra,* 193 Cal.App.2d 720.)

In *Sartain* v. *Pitchess*, 368 F.2d 806, it is appropriately stated, "When a parolee is already in physical custody of authorities, a 'hold' is the customary and proper method to reassert his obligation to the parole board; and is issued by the parole officer."

In the deputy district attorney's opening argument to the jury, he stated: ". . . you might say to yourselves, well, I wish before I had to decide whether the defendant possessed it for sale we had certain evidence here that he in fact sold heroin. You might think, well, if we had testimony that there was a narcotic transaction that actually took place, we'd like to hear that. Well, that is another offense and a greater offense than possession for sale. I think you can appreciate that if the defendant had been observed to sell heroin, he would be here on the yet higher charge, Sale of Heroin."

Appellant's counsel then said:

"MR. MAPLE: Well, I am going to object to counsel's remark that it is a higher offense. I don't believe that is really

so. Under these circumstances, I think it is an improper argument.''

The judge stated:

''THE COURT: I think, myself, it is something we haven't touched on in the trial, and the jury is admonished to disregard it.''

Appellant asserts now that the prosecutor misstated the law thereby causing prejudicial error.

First of all, as we read the pertinent code sections, it was a more serious offense for a person in appellant's position to sell heroin than to have possession of heroin for sale. In the former situation, the imprisonment could be for life; in the latter the maximum is 15 years. In any event, a reading of the entire record dictates clearly that the judge admonished the jury to disregard the statements, that each counsel told the jury that their statements were not statements of the law and that the court would instruct as to the law and that the error, if any, was entirely harmless and insufficient to constitute a cause for reversal. (Cal. Const., art. VI, § 4½.*)

Lastly, appellant argues that the judge should have instructed the jury that they could place no ''undue emphasis'' on appellant's failure to testify. If appellant desired any such an instruction, he should have requested it. By his failure to do so, he waived any right to complain about it for the first time on appeal. (*People* v. *Lopez,* 213 Cal.App.2d 668, 674 [28 Cal.Rptr. 912]; *People* v. *Robinson,* 180 Cal. App.2d 745, 752 [4 Cal.Rptr. 679].)

*Griffin* v. *California,* 380 U.S. 609 [14 L.Ed.2d 106, 85 S.Ct. 1229], relied upon by appellant does not direct any such an instruction to be given by the judge upon his own motion.

The judgment is affirmed.

Wood, P. J., and Lillie, J., concurred.

---

*Reporter's Note: Now art. VI., § 13. See constitutional revision adopted November 8, 1966.