[Crim. No. 26088. Second Dist., Div. Two. May 7, 1975.]

THE PEOPLE, Plaintiff and Respondent, v.
JOHNNIE FAUBUS, Defendant and Appellant.

**COUNSEL**

Richard Edwards, under appointment by the Court of Appeal, for Defendant and Appellant.

Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, S. Clark Moore, Assistant Attorney General, Susanne C. Wylie and Abram Weisbrot, Deputy Attorneys General, for Plaintiff and Respondent.

## Opinion

**COMPTON, J.**—Defendant and his wife were jointly charged with violating section 11483, subdivision (2), of the Welfare and Institutions Code (fraudulently obtaining welfare benefits in excess of $200).[1]

On November 17, 1971, defendant's wife executed an application for aid to families with dependent children. The application indicated that there were four children in the home, that the defendant, the father, had not worked for the previous three months, and was at the time unemployed. On November 22, 1971, a social worker visited the defendant and his wife in the home. Both were advised of the programs of assistance available to them and their responsibility to report any change in status or income, especially were they advised that it was necessary to inform the department of public social service if the defendant obtained work. Defendant was given a form for unemployed fathers to register for employment opportunities. Defendant executed that form. Subsequently, aid payments to the Faubuses were commenced.

In March of 1972, another social worker obtained the execution of eligibility forms at the Faubus home. These forms were again executed by Mrs. Faubus.

In May 1972, the defendant and his wife represented to a worker for the Department of Public Social Services that defendant was still unemployed and had remained such since 1971. On this occasion defendant and his wife both signed the eligibility forms and swore under oath as to the truth of the information contained therein. They were both advised that it was unlawful to give false information and they were further told of their duty to notify the Department of Public Social Services of any change in status. Defendant again signed a form for unemployed fathers which served as a job application with the Department of Unemployment. In December of 1972, defendant signed another form indicating his unemployed status.

---

[1]Welfare and Institutions Code section 11483, subdivision (2), provides: "Whenever any person has, by means of false statement or representation or by impersonation or other fraudulent device, obtained aid for a child not in fact entitled thereto, the person obtaining such aid shall be punished as follows: . . . (2) If the amount obtained or retained is more than two hundred dollars ($200), by imprisonment in the state prison for not less than one year or more than 10 years or by imprisonment in the county jail for not more than one year."

During the period from December 1971 to 1973, defendant was regularly and continuously employed and received weekly paychecks. Defendant did not testify at the trial. His wife, however, did testify to the effect that she advised the social worker in 1971 that the defendant was incapacitated but might soon be employed and that she and the defendant were not going to be living together. On November 22, 1971, according to Mrs. Faubus, she told the social worker that the defendant was not living in the home. She testified that in fact defendant was absent from her home through December of 1972. The thrust of her testimony was that she had truthfully advised the social workers of the fact that the defendant was employed but that the social worker advised her to falsely enter information on the requisite form.

The overwhelming and uncontradicted evidence establishes that the defendant knowingly made false statements concerning his employment status and that as a result of those statements he aided and abetted his wife in obtaining aid for their children, aid to which they were not entitled. Defendant's only contention on appeal is that the trial court failed to correctly instruct the jury on the issue of intent.

The issue was framed when the defendant offered, and the trial court refused, several instructions to the effect that in order to find defendant guilty, the jury must find that he had the specific intent to defraud. Instead the trial court instructed the jury that the crime with which defendant was charged consisted of the following elements: (1) the making of a statement known to be false, (2) a reliance by the county on the false statement, (3) a payment of money by the county as a result of such reliance, and (4) the lack of entitlement to such money.

Additionally, the court defined "knowingly" (CALJIC No. 1.21)[2] "aiding and abetting" (CALJIC No. 3.01)[3] and so-called "general criminal intent" (CALJIC No. 3.30).[4]

---

[2]CALJIC No. 1.21 states: "The word 'knowingly', as used in my instructions, imports only a knowledge of the existence of the facts in question, when those facts are such as bring the act or omission within the provision of the law. The word does not require in its meaning any knowledge of the unlawfulness of such act or omission."

[3]CALJIC No. 3.01 states: "A person aids and abets the commission of a crime if he knowingly and with criminal intent aids, promotes, encourages or instigates by act or advice, or by act and advice, the commission of such crime."

[4]CALJIC No. 3.30 states: "In the crime charged in the information, there must exist a union or joint operation of act or conduct and criminal intent. To constitute criminal intent it is not necessary that there should exist an intent to violate the law. Where a person intentionally does that which the law declares to be a crime, he is acting with criminal intent, even though he may not know that his act or conduct is unlawful."

In sum the trial court did not tell the jury, as defendant requested, that the defendant in making his false statements and thereby aiding and abetting his wife in obtaining the welfare aid, must have specifically intended to defraud the county. Defendant asserts that a violation of Welfare and Institutions Code section 11483 is a "specific intent" crime. Technically he is correct, however, the characterization of a crime as one of specific intent has little meaningful significance in instructing a jury. The critical issue is the accurate description of the state of mind required for the particular crime.

■ Every true crime, and the charge here is a true crime, (see *People v. Vogle*, 46 Cal.2d 798 [299 P.2d 850]) has two components—conduct by either act or omission and a culpable state of mind or mens rea. If a jury is correctly instructed as to the particular mens rea of the crime charged, it is not essential that that mens rea be further characterized as "general" or "specific."

■ An intent to defraud is a shorthand expression for the intent to induce the victim, by a false representation, to part with money or property knowing that he would not do so but for the false representation. Such an intent is an ingredient of the crime of theft by false pretenses (*People v. Marsh*, 58 Cal.2d 732 [26 Cal.Rptr. 300, 376 P.2d 300]) and because of the legislative history of Welfare and Institutions Code section 11483, we conclude it is also an ingredient of a violation of that statute.

Prior to 1970, Welfare and Institutions Code section 11483 read as follows: "Whenever any person has, by means of false statement or representation or by impersonation or other fraudulent device, obtained aid for a child not in fact entitled thereto, the person obtaining such aid shall make restitution and all actions necessary to secure restitution may be brought against him." The statute contained no penal sanctions.

However, Welfare and Institutions Code section 11482 provided: "Any person other than a needy child, who willfully and knowingly, with the intent to deceive, makes a false statement or representation or knowingly fails to disclose a material fact to obtain aid, or who, knowing he is not entitled thereto, attempts to obtain aid or to continue to receive aid to which he is not entitled, or a larger amount than that to which he is legally entitled, is guilty of a misdemeanor."

In *People* v. *Gilbert,* 1 Cal.3d 475 [82 Cal.Rptr. 724, 462 P.2d 580], a case in which a defendant was convicted of grand theft for fraudulently obtaining over $200 in aid to dependent children, the Supreme Court held that the enactment of Welfare and Institutions Code section 11482 as a special statute dealing with welfare fraud, precluded the prosecution of the defendant for the general crime of grand theft. The court stated in a footnote at page 481: "If the Legislature wanted to retain the theft penalty in welfare fraud cases, it would have explicitly so stated."

Subsequently, the Legislature, in 1970, amended Welfare and Institutions Code section 11483 to include penalties identical to those for grand and petty theft based upon the $200 demarcation which exists between grand and petty theft. These amendments resulted from enactment of Assembly Bill 48 in the 1970 regular legislative session. The legislative counsel's analysis which was noted on the bill stated in part: "Provides that a person who obtains or retains an amount in excess of $200 as a result of *fraud* under the aid to families with dependent children shall be punished . . . ."

It seems clear that this legislation was in response to the holding in *People* v. *Gilbert, supra.* The legislative intent was to provide theft penalties for this type of welfare fraud.

█ It was error for the trial court here to fail to instruct the jury that proof of a violation of Welfare and Institutions Code section 11483 required a showing that defendant knowingly made false representations knowing or intending that the county would, as a result of those representations, provide welfare payments to which defendant's children were not entitled.

We are persuaded, however, that under the facts of this case the error was harmless beyond any reasonable doubt and that no different result would have been probable had the additional instruction been given. The evidence admits of no interpretation other than that defendant intended to deceive the county concerning the fact that he was steadily employed and that the purpose of this deception was to wrongfully obtain welfare assistance. (*People* v. *Holquin,* 229 Cal.App.2d 398, 403 [40 Cal.Rptr. 364].)

Defendant offered no theory of defense based upon a lack of intent to defraud. There was not the slightest suggestion that defendant in good

faith believed his statements to be true. The defense theory as gleaned from the testimony of the wife was that the statements alleged to be false had not in fact been made or if false statements were contained in the application they were placed there at the encouragement of the social worker. There is nothing in the record to suggest that the defendant or his wife were unaware of the significance and the falsity of the statements which were contained in the application and that they were critical to obtaining the requested aid.

The judgment is affirmed.

Beach, J., concurred.

**FLEMING, Acting P. J.**—I concur only in the judgment and disagree with the statements in the majority opinion about the insignificance and inessentiality of the difference between general and specific intent.

Appellant's petition for a hearing by the Supreme Court was denied July 3, 1975.